IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 88310-1-I |
| M.K., | DIVISION ONE |
| | UNPUBLISHED OPINION |
| Appellant. | |

Díaz, J. — A trial court committed M.K. to 14 days of involuntary detention pursuant to the involuntary treatment act (ITA), chapter 71.05 RCW. M.K. now argues the State failed to adduce sufficient evidence proving she was gravely disabled. Disagreeing, we affirm.

## I.  BACKGROUND

In April 2025, a designated crisis responder (DCR) petitioned for an initial 120-hour period of treatment for M.K. after her mother, Ruth, referred her for evaluation. The DCR noted that M.K. had been detained twice before under similar circumstances because she was unable to care for herself without assistance. The DCR indicated M.K. had recently been responding to internal stimuli, had become incontinent, and was no longer connected to outpatient services or taking her antipsychotic medication. Thereafter, treating mental health professionals at

Fairfax Hospital (Fairfax) sought to commit M.K. for 14 more days. A superior court held a hearing on the petition in May 2025.

After hearing testimony from M.K.'s mother and a Fairfax Hospital court evaluator, a commissioner of the court entered an order which found the State successfully proved by a preponderance that M.K. was gravely disabled. The court's written order detailed findings and conclusions from the witnesses' testimony and incorporated its oral rulings from the hearing. The court ordered an additional 14 days of commitment at Fairfax. M.K. timely appeals.[1]

## II. ANALYSIS

Under the ITA, a court may grant a petition seeking up to 14 days of involuntary commitment if, at the conclusion of a probable cause hearing, it finds by a preponderance of the evidence that a person is, inter alia, "gravely disabled" as the result of a behavioral health disorder. RCW 71.05.240(4)(a); see also In re Welfare of Sego, 82 Wn.2d 736, 739 n. 2, 513 P.2d 831 (1973) (defining preponderance of the evidence as "more probably true than not").

Our review "is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment." In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Substantial evidence is a quantum of evidence sufficient to persuade a fair-minded person. In re Det. of A.F., 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021). In such a review, we do not disturb a trial court's determinations

---

[1] Subsequently, M.K. was committed to 90 additional days of inpatient treatment, but she has only appealed from the 14-day order.

2

as to credibility or the persuasiveness of evidence.  Id.  If there is evidence sufficient to satisfy this standard, we may not substitute our judgment for the fact finder's.  In re Meistrell, 47 Wn. App. 100, 109, 733 P.2d 1004 (1987) (reiterating the same rule in a civil commitment case).

The ITA provides two alternate definitions of "gravely disabled."  The term means:

> a condition in which a person, as a result of a behavioral health disorder: (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(25).

Our Supreme Court has required a petitioner to make several showings to satisfy this second prong.  LaBelle, 107 Wn.2d at 208.  Namely, there must be some factual basis for concluding the respondent (1) had experienced a severe deterioration in routine functioning including recent proof of significant loss of cognitive or volitional control, and (2) would not receive care essential for her health or safety if released.  Id.  To prove the latter, the Court explained, "[T]he evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered."  Id.  Finally, it noted the definition implicitly requires some showing that the respondent is "unable . . . to make a rational decision with respect to [their] need for treatment."  Id.  (emphasis omitted).

We hold there is substantial evidence in this record to meet each of these components of RCW 71.05.020(25)(b).[2]

With regard to a deterioration in functioning, there was an ample factual basis for concluding M.K.'s mental state had seriously devolved. See LaBelle, 107 Wn.2d at 208. Namely, her mother testified that M.K. had been hospitalized three times over the previous three years and—after she had refused to continue with outpatient treatment, but before the referral in the present case—she again had become unable to care for her basic needs. M.K. had become incontinent, was not sleeping, and could not feed herself. For example, M.K. had burned pots while trying to cook and her mother disconnected the stove for her safety.

Moreover, the court evaluator testified that M.K. had not been taking her medication prior to her most recent hospitalization. When M.K. is medicated and treated and she is fully at her baseline, her mother explained she can take care of her hygienic needs, sleep, and cook for herself. She also reported that when M.K. is stabilized, she does not experience delusions, which she had been experiencing again recently.

As to whether M.K. would receive care essential for her health or safety if released, the testimony at the hearing also provided a factual basis to conclude M.K. would not if released. See LaBelle, 107 Wn.2d at 208. Specifically, the court evaluator introduced hospital records documenting that only days before the

---

[2] Because RCW 71.05.020(25) sets out two independent bases for concluding a person is gravely disabled, we need not also assess the evidentiary support for the definition in subsection (a). See LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989) (holding we may affirm on any basis supported by the record.)

hearing, M.K. was still exhibiting active symptoms, including withdrawal, delusions, and apparently not taking care of her hygiene. Though she had shown some signs of improvement since admission, she still needed assistance completing activities of daily living and prompting to take her medications.

Relatedly, her mother opined that, after her second stint in the hospital, M.K. had severely regressed within just three weeks of her release. This testimony about M.K.'s recent, rapid deterioration under similar circumstances served to demonstrate the harmful consequences likely to follow if she were released without being fully stable at the time of the hearing. See LaBelle, 107 Wn.2d at 208. What's more, her mother also testified she was concerned that if M.K. were released, she might harm herself. And she worried M.K. would refuse treatment again and just "end up at the same place."

Finally, the court evaluator opined that M.K. lacked insight into her need for mental health treatment and medication and he noted other recent reports from medical professionals who examined her, who agreed. See LaBelle, 107 Wn.2d at 208.

In short, ample evidence provided a factual basis from which a fair-minded, rational person could conclude it was more likely than not that M.K. had recently experienced a significant loss of cognitive or volitional control, and she would not receive essential care for her health and safety if released. See RCW 71.05.020(25)(b); Sego, 82 Wn.2d at 739.

In response, M.K. argues that the "State did not prove, and the court did not find, that if M.K. remained in relatively stable condition, as she was at the time of

5

the hearing, that she could not safely return to her mother." This argument fails because it does not undermine the substantial evidence that she would not remain "relatively stable" without further hospitalization.

M.K. also asserts her basic needs could have been met because her mother was only reluctant to allow her to return home "if she was not participating in treatment." And, in Ruth's care, "M.K.'s basic health and safety needs would be met[.]" This argument likewise ignores the testimony to the court that she needed prompting to take her medication, lacked insight into her need for medication, and would not participate in treatment if released.

In summary, we hold there is substantial evidence to support the commissioner's conclusion that M.K. was gravely disabled, justifying the 14-day commitment order.

### III. CONCLUSION

We affirm.

Díaz, J.

WE CONCUR:

Birk, J.

, ACJ